Matter of New York City Tr. Auth. v Phillips (2018 NY Slip Op 02442)





Matter of New York City Tr. Auth. v Phillips


2018 NY Slip Op 02442


Decided on April 10, 2018


Appellate Division, First Department


Manzanet-Daniels, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 10, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick, J.P.
Rosalyn H. Richter
Sallie Manzanet-Daniels
Richard T. Andrias
Ellen Gesmer, JJ.


450078/15 5760 

[*1]In re New York City Transit Authority, et al., Petitioners-Appellants,
v
Earl Phillips, etc., Respondent-Respondent.



Petitioners appeal from the judgment of the Supreme Court, New York County (Alice Schlesinger, J.), entered October 31, 2016, denying the petition to vacate an arbitration award, confirming the award, and dismissing the proceeding.




James Henley, Brooklyn (Timothy J. O'Shaughnessy and Lawrence Heisler of counsel), for appellants.
Advocates for Justice, New York (Arthur Z. Schwartz of counsel), for respondent.



MANZANET-DANIELS, J.


In this article 75 proceeding, petitioners seek to vacate a determination by an arbitrator under a collective bargaining agreement that set aside a determination by petitioners that Tony Aiken had committed sexual harassment, and ordered his termination. Although expressly agreeing with the pertinent factual findings in the investigation report of petitioners' Office of Equal Employment Opportunity (EEO) — including findings that Aiken had stated to a colleague that if he had a woman like her he would stay in bed all day and "oil her down" — the arbitrator nonetheless, and incredibly and inconsistently with his own findings, ruled that the conduct did not "rise to the level" of sexual harassment. We now reverse.
In late 2012, Tulani Melendez, a bus dispatcher who worked at the same bus depot as Aiken, submitted a 13-page handwritten complaint to petitioners' EEO describing numerous unwanted advances and sexually inappropriate comments by Aiken, a union delegate and bus [*2]operator under her supervision. Melendez asserted that in retaliation for rebuffing his advances, Aiken humiliated her in front of others and countermanded her express directions to subordinates.
The EEO conducted an investigation, interviewing Melendez, Aiken, another bus operator who also reported being harassed by Aiken, as well as numerous dispatchers, bus operators, two managers, and a union representative. A number of these individuals corroborated Melendez's account of the harassment; none controverted her account.
Melendez described numerous inappropriate statements and conduct, including remarks that Melendez was "sexy," and asking if she were looking for another husband, coupled with an offer to act as her "sugar daddy." On one occasion, as bus operators were reporting to Melendez for their assignments, Aiken remarked loudly, "Isn't she fine? What would you do if you had a woman like her at home? I wouldn't leave the house. I would stay in bed all day. I would oil her down." On at least two occasions when they were in the crew room, Aiken placed his wallet on the ledge and said, in the presence of other operators, "I would give all of this for that [referring to Melendez]."
Melendez claimed that Aiken's conduct took place in front of others, and caused her to feel so humiliated and degraded that on November 11, 2012, she worked out of her car to avoid Aiken. When the harassment first began, Melendez tried to steer clear of Aiken; as the harassment continued, she repeatedly told him to stop and to leave her alone, to no avail.
After Melendez filed an official complaint on December 3, 2012, she was told that Aiken would be limited to the second floor of the depot, yet on December 15, 2012, Aiken entered the office where she was working.
Coworker Lourdes Alvarado also stated that Aiken was insubordinate and unprofessional with her. When she first arrived at the depot, he would ask the other bus operators, "Isn't she beautiful?" and say to Alvarado, "If you were my wife you wouldn't have to work. You could stay in bed all day. I'd rub your feet." On one occasion in the break room, Aiken threw his wallet on the table where Alvarado was sitting and asked, "How much?" In late 2012, Aiken said to her, "You're cut off. This is my new girlfriend," referring to Melendez, who was standing a few feet away.
On April 12, 2013, the EEO issued a report concluding that there was reasonable cause to believe that Aiken had subjected Melendez to inappropriate and unwelcome comments of a sexual nature in violation of section 3.0 of petitioners' sexual and other discriminatory harassment policy, which defined sexual harassment to include "unwelcome sexual advances and other behavior of a sexual nature when . . . such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creates an intimidating, hostile, or offensive working environment."[FN1]
On May 10, 2013, disciplinary charges were issued against Aiken for, inter alia, sexual harassment, discriminatory, harassing and/or sexist language, gross misconduct and conduct unbecoming a MABSTOA employee. The charges cited specific instances of inappropriate and unwelcome comments of a sexual nature made by Aiken to Melendez and Alvarado, and concluded that Aiken had created a hostile work environment for Melendez and other female employees that adversely affected their ability to perform their job.
After Aiken failed to appear for step 1 of the disciplinary grievance procedure, the penalty of termination was deemed imposed. Respondent thereafter commenced a "contract [*3]interpretation" grievance (as opposed to a disciplinary grievance) under the collective bargaining agreement, asserting that petitioners had no power to discipline Aiken because he was on union-paid release. The arbitrator issued a decision finding that petitioners had violated the CBA by seeking to impose discipline on Aiken while he was on paid release time, and ruled that the disciplinary charges be held in abeyance in perpetuity as long as Aiken remained on union-paid release.[FN2]
The Supreme Court granted the motion to confirm the award in part and the cross motion to dismiss in part, finding that the disciplinary charges could go forward, but that petitioners could not impose discipline on Aiken while he remained on union-paid release.
This Court vacated the arbitration award, finding that "the arbitrator's interpretation of the CBA — requiring reinstatement of the sexual harassment offender because the union-paid release time acts as a shield — runs counter to the identified public policy against sexual harassment in the workplace" (132 AD3d 149, 153 [1st Dept 2015], lv denied 27 NY3d 901 [2016]). We stated that the policy prohibiting sexual harassment was "well recognized," noting that Title VII of the Civil Rights Act of 1964 prohibited employment discrimination on the basis of sex, defined as, inter alia, "verbal or physical conduct of a sexual nature . . . [which has] the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment" (id.). The implementing regulations made clear that the onus was on the employer to maintain a workplace free of harassment, rendering it liable for sexual harassment between fellow employees of which the employer knew or should have known, unless it could be shown that the employer took immediate and appropriate corrective action (id. at 155). Employers were required to take all reasonable steps to prevent sexual harassment, such as "developing appropriate sanctions," and "creat[ing] a procedure . . . that encourages victims of sexual harassment to come forward" (id.). We reasoned that "[b]ecause title VII is designed to encourage the creation of anti-harassment policies and effective complaint mechanisms for reporting harassing conduct, an employer's investigation of a sexual harassment complaint is not a gratuitous or optional undertaking . . ., and appropriate corrective action is required following such investigation (id. at 156-157). We noted that state law was to similar effect, and the protections of the New York City Human Rights Law are even more expansive (id. at 156).
We found that by ordering reinstatement on the basis of the release time rules, the arbitrator had effectively prevented the Transit Authority from following its policies and satisfying its legal obligation to safeguard against sexual harassment in the workplace (id. at 157). Such a result would embolden offenders like Aiken, while simultaneously deterring victims like Melendez from coming forward to report offensive behavior (id.).
The parties proceeded to arbitrate the disciplinary charges on the merits. The arbitrator credited Melendez's testimony that Aiken had made "inappropriate sexist remarks to and/or about her in the presence of other employees on a number of occasions," finding her testimony to be corroborated by that of other witnesses. Although stating that he felt "compelled to come to the same factual conclusions as the EEO Investigators did," and finding Aiken's conduct to have violated applicable workplace directives concerning maintenance of a respectful workplace, the arbitrator nonetheless concluded, without explanation, that Aiken's misconduct did not rise to the [*4]level of a dischargeable offense as defined in petitioners' Policy Instruction on Sexual and other Discriminatory Harassment. The arbitrator found that the Authority had not shown cause for Aiken's discharge, but only for imposition of a 10-day suspension and to require that he complete an approved sensitivity training course. The arbitrator blamed Melendez, as a supervisor, for failing to earlier report sexual harassment, reasoning, "If, as she testified, [Aiken's] remarks caused her to feel angry, humiliated and upset, Melendez was obligated to tell him in no uncertain terms his comments were unwelcome and that she would take appropriate action if he did not cease and desist from making them. She did not do so. . . . Had Melendez notified [petitioners] of [Aiken's] remarks in a timely manner, as she is required to do, it is unlikely this matter would have gone as far as it has." Supreme Court confirmed the arbitration award and denied petitioners' motion to vacate the award. We now reverse. The award in this case is both irrational and against this State's strongly articulated public policy against sexual harassment in the workplace.
Judicial review of an arbitration award is narrowly circumscribed, and vacatur limited to instances where the award is "violative of a strong public policy, is irrational, or clearly exceeds a specific limitation on an arbitrator's power" (Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO, 306 AD2d 486, 486 [2d Dept 2003], lv denied 1 NY3d 510 [2004]). Under the public policy exception, courts will intervene only in "cases in which the public policy considerations, embodied in statute or decisional law, prohibit, in an absolute sense, particular matters being decided or certain relief being granted by an arbitrator" (Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO, 99 NY2d 1, 7 [2002] [internal quotation marks omitted]).
On the prior appeal, we found that shielding perpetrators of sexual harassment from disciplinary action for an indefinite time on the basis of a technicality concerning union release time fell within the second prong of the public policy exception. That same public policy against workplace sexual harassment that we articulated in our prior opinion is offended here — indeed all the more so — where the arbitrator has made explicit findings of fact concerning the nature of Aiken's misconduct.
The arbitrator's decision fashions a remedy that violates public policy. Moreover, it contains language maligning victims in an entirely inappropriate manner, including statements that it was incumbent on Melendez to take appropriate action if she felt Aiken's comments were inappropriate. Such a "blame the victim" mentality inappropriately shifts the burden of addressing a hostile work environment onto the employee. The arbitrator's decision belies the realities of workplace sexual harassment. The fact that the victim did not earlier report Aiken's behavior is not atypical and should in no way be construed as absolving Aiken of his misconduct.
The arbitrator's decision effectively prevents petitioners from following their policies and fulfilling their legal obligations to protect against workplace sexual harassment. It is the employer's responsibility to implement appropriate policies to protect against workplace harassment, including the institution of appropriate complaint procedures that encourage victims to come forward, and the implementation of appropriate sanctions that are designed to deter offensive behavior. The arbitrator's decision subverts this well established policy by shifting the onus to the employee to report and fend off the harasser. Indeed, the arbitrator's decision emboldens future harassers to engage in pernicious misconduct, knowing that they are likely to receive little more than a slap on the wrist as punishment. Victims would be less likely to report harassment, knowing that their employer will do little to protect them from even well-documented and pervasive misconduct. Employers' ability to remedy such behavior would be undermined, limiting their ability to punish offenders and to deter similar behavior in the future.
Accordingly, public policy prohibits enforcement of the arbitration award in this case (see e.g. Matter of Michael Bukowski [State of N.Y. Dept. of Corr. & Community Supervision], 148 [*5]AD3d 1386 [3d Dept 2017] [in view of strong, explicit, and clearly articulated statutory and regulatory prohibitions against the use of unjustified physical force in the correctional context, and given that the correction officer employee unquestionably engaged in such conduct, public policy prohibited enforcement of the penalty of a 120-day suspension imposed by the arbitrator, and court remitted matter for imposition of a new penalty]).
Further, the arbitrator's decision is irrational as it purports to adopt the findings of the EEO in all respects, and yet arrives at the unsustainable conclusion that Aiken did not violate the workplace sexual harassment policy. Among the express findings of the EEO — with which the arbitrator was "compelled to agree" — were that Aiken offered to act as Melendez's "sugar daddy"; that Aiken stated, in the presence of others, that he would "stay in bed all day" if he had a woman like Melendez and would "oil her down"; and that Aiken placed his wallet on the ledge and stated in the presence of others, "I would give all of this" for Melendez.
Given such findings, it is unfathomable that the arbitrator could find that Aiken's conduct did not violate the workplace policy against sexual harassment, which expressly defines sexual harassment to include behavior which "has the purpose or effect of unreasonably interfering with an individual's work performance or creates an intimidating, hostile or offensive working environment." This disjunction between the arbitrator's findings and his summary conclusion that Aiken's behavior nonetheless did "did not rise to the level" of sexual harassment is fundamentally irrational (see e.g. Matter of Livermore-Johnson [N.Y. State Dept. of Corr. & Community Supervision], 155 AD3d 1391 [3d Dept 2017] [arbitrator's erroneous interpretation of collective bargaining agreement as precluding him from considering whether the employer established probable cause for an employee's suspension, in effect creating a requirement that the suspension notice itself set forth probable cause, was fundamentally irrational, warranting vacatur of arbitration award]).
This case is similar to that of Matter of Ford v Public Empl. Fed. (175 AD2d 85 [1st Dept 1991]), where we found an arbitration award to be both contrary to public policy and irrational. In Ford, the arbitrator sustained several findings of incompetence and misconduct on the part of the respondent doctor, yet declined to impose any penalty, concluding there was no "just cause" for sanctions under the collective bargaining agreement. We reversed and remanded for the imposition of an appropriate penalty, reasoning that it was error to refuse to impose a sanction on the respondent in light of the findings of incompetence and misconduct (see id. at 87-88).
So too here, the arbitrator's conclusion that Aiken's conduct did not rise to the level of sexual harassment, as well as the penalty imposed, a meager 10-day suspension, was fundamentally at odds with the arbitrator's own findings of fact, and contrary to the well-recognized policy of the State in protecting against workplace sexual harassment, and the award
cannot stand.
Respondent misleadingly asserts that the arbitrator found the misconduct in question to fall outside the applicable 30-day limitations period. The arbitrator specifically found that "[n]otwithstanding Melendez's inability to provide specific dates. . . Transit has shown it more likely than not some of the offensive remarks were made within thirty (30) working days prior to her initial complaint."
Accordingly, the judgment of the Supreme Court, New York County (Alice Schlesinger, J.), entered October 31, 2016, denying the petition to vacate an arbitration award, confirming the award, and dismissing the proceeding, should be reversed, on the law, without costs, the petition granted, and the matter remanded to a different arbitrator to enter a finding that respondent Aiken subjected Melendez to inappropriate and unwelcome comments of a sexual nature in violation of petitioners' sexual and other
discriminatory harassment policy, and to pass upon the appropriateness of the penalty of termination.
All concur.
Judgment, Supreme Court, New York County (Alice Schlesinger, J.), entered October 31, 2016, unanimously reversed, on the law, without costs.
Opinion by Manzanet-Daniels. All concur.
Renwick, J.P., Richter, Manzanet-Daniels, Andrias, Gesmer, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: APRIL 10, 2018
CLERK



Footnotes

Footnote 1:The EEO found no reasonable cause to believe Aiken retaliated against Melendez in violation of petitioners' anti-retaliation policy.

Footnote 2:The parties agreed to arbitrate separately the question of whether Aiken was in fact terminated owing to his failure to attend the step 1 grievance. In February 2014, the arbitrator ruled that he was in fact not so terminated. MABSTOA did not challenge that determination in this Court.